# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 25-cr-336 (JRT/JFD) |
| Plaintiff, | |
| v. | **ORDER**<br>**and** |
| Bryan Wesley Edison, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for an order and report and recommendation on the following motions filed by Defendant Bryan Wesley Edison: second Motion to Dismiss Indictment (Dkt. No. 61), Motion for Bench Trial (Dkt. No. 63), Motion to Reopen Detention Hearing (Dkt. No. 64), third Motion to Dismiss Indictment (Dkt. No. 65), fourth Motion to Dismiss Indictment (Dkt. No. 68), Motion in Limine to Preclude Evidence (Dkt. No. 69), Motion for Discovery (Dkt. No. 72), fifth Motion to Dismiss Indictment (Dkt. No. 73), and sixth Motion to Dismiss Indictment (Dkt. No. 75).[1] The United States opposes all motions (Dkt. No. 76). The Court held a motion hearing on May 27, 2026, and took the motions under advisement on that date.

---

[1] Mr. Edison is currently representing himself, and he filed these motions pro se. When Mr. Edison was represented by counsel, he filed his first motion to dismiss (Dkt. No. 45) and a motion for a speedy trial (Dkt. No. 46). The Court addressed those motions in a Report and Recommendation (Dkt. No. 59), which was adopted on June 1, 2026 (Dkt. No. 80).

The Court will address Mr. Edison's motions to dismiss first and will recommend that they be denied. The other motions are nondispositive in nature, and they are denied, except for the motion in limine, which is reserved for trial.

## I.      Second Motion to Dismiss the Indictment (Dkt. No. 61)

Mr. Edison is charged with 16 counts of Animal Crushing, in violation of 18 U.S.C. § 48(a)(1). (Indictment at 3–9, Dkt. No. 1.) This statute provides, "It shall be unlawful for any person to purposely engage in animal crushing in or affecting interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 48(a)(1). For the purposes of § 48, "the term 'animal crushing' means actual conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury . . . ." *Id.* § 48(f)(1). There are several exceptions to the statute, including conduct that is "a customary and normal veterinary, agricultural husbandry, or other animal management practice" and conduct that is "the slaughter of animals for food." *Id.* ¶ 48(d)(1)(A), (B).

The Indictment alleges in relevant part that Mr. Edison created and maintained YouTube channels on which he uploaded hundreds of videos depicting animals being crushed or tortured. (Indictment ¶ 1.b.) The videos show him placing small live animals such as birds, hamsters, mice, guinea pigs, and rabbits into enclosures that contained larger live animals such as a snapping turtle, a monitor lizard, and a dog. (*Id.* ¶¶ 1.c.–d., 3) The Indictment alleges that the smaller animals were crushed, impaled, suffocated, and dismembered by the larger animals. (*Id.* ¶ 1.d.)

2

In Mr. Edison's second motion to dismiss the indictment, he argues that allowing "a captive predatory animal to slaughter a prey animal for the purpose of food is exempt from [the] Animal Crushing statute. This act called 'live feeding' is an animal management practice." (Second Mot. Dismiss at 3, Dkt. No. 61.) Mr. Edison suggests that an expert witness could "explain to a jury how predators can benefit from slaughtering prey animals for food." (*Id.* at 4.)

Federal Rule of Criminal Procedure 12(b)(1) permits a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Mr. Edison has offered no argument or legal authority to support the dismissal of the Indictment before trial. Indeed, he seems to concede that whether his conduct falls under the "customary and normal . . . animal management practice" exception or the "slaughter of animals for food" exception to the Animal Crushing statute is a matter for a jury at trial, because he describes possible expert evidence he would introduce to help a jury understand the benefits of slaughtering animals for food. (Second Mot. Dismiss at 4.) Whether Mr. Edison's conduct constitutes the offense of Animal Crushing, or whether it was a customary and normal animal management practice or the slaughter of animals for food, will depend on the evidence introduced at trial. Fact-driven arguments are not appropriately made in a Rule 12 motion to dismiss. *United States v. Winningham*, 953 F. Supp. 1068, 1075 (D. Minn. 1996). Because the question cannot be determined without a trial on the merits, the Court recommends that Mr. Edison's second motion to dismiss be denied.

**II.      Third Motion to Dismiss the Indictment (Dkt. No. 65)**

Mr. Edison next asks the Court to dismiss the Indictment because his alleged conduct is protected by the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* (Third Mot. Dismiss at 1, Dkt. No. 65.) He argues that the Indictment "violates religious exercise and criminalizes God's design and the natural way of life." (*Id.* at 3, 4.) Mr. Edison explains that he is Muslim, and the Quran allows the consumption of animals slaughtered by captive predator pets. (*Id.* at 5.) The United States responds that Mr. Edison has not established that the Animal Crushing statute or the charges against him substantially burden his religious freedom. (Gov't's Opp'n at 5.)

"A person whose religious practices are burdened in violation of RFRA 'may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.'" *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (quoting § 2000bb–1(c)). The Animal Crushing statute contains an exception specific to RFRA: "This section shall be enforced in a manner that is consistent with section 3 of the Religious Freedom Restoration Act of 1993 (42 U.S.C. 2000bb-1)." 18 U.S.C. § 48(d)(4).

"Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). Unlike a First Amendment free-exercise analysis, "RFRA extends free exercise rights even to religious practices that are not compelled by or central to a particular belief system." *United States v. Ali*, 682 F.3d 705, 710 (8th Cir. 2012).

Mr. Edison must first prove that a governmental policy or action "substantially burdened a sincerely held religious belief." *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir.

4

1996). Under RFRA, "a rule imposes a substantial burden on the free exercise of religion if it prohibits a practice that is both sincerely held by and rooted in the religious beliefs of the party asserting the claim or defense." *United States v. Ali*, 682 F.3d 705, 710 (8th Cir. 2012) (cleaned up). The government must then "demonstrate[] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Holt*, 574 U.S. at 357 (quoting 42 U.S.C. § 2000bb-1(a), (b)); *see Ali*, 682 F.3d at 711.

Mr. Edison does not clearly define his sincerely held religious belief, but the Court gathers from his motion that he believes a captive predator animal should be allowed to slaughter a prey animal for the purpose of providing food for human consumption. The Court arrives at this understanding of what he claims is a sincerely held religious belief by drawing on Mr. Edison's reference in his motion to the practice of "permitting a predator animal to slaughter a prey animal for the purpose of food," Mr. Edison's citation to a passage in the Quran supposedly allowing "the consumption of animals slaughtered by captive predator pets," and Mr. Edison's reference to the human consumption of rabbits and guinea pigs as food. (*See* Third Mot. Dismiss at 4–6, 8.) Mr. Edison does not claim, however, that he or any other person consumed, intended to consume, or would consume the animals slaughtered by the captive predator animals.

> Substantially burdening one's free exercise of religion means that the regulation "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion."

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)). Mr. Edison has not shown that the Animal Crushing statute or this prosecution significantly inhibit or constrain his religious expression, meaningfully curtail his ability to express adherence to his faith, or deny him a reasonable opportunity to engage in an activity fundamental to his religion. Therefore, he has not established a substantial burden on his free exercise of religion. Without such a showing, Mr. Edison cannot satisfy his burden of proof for a RFRA claim. The Court therefore recommends that Mr. Edison's third motion to dismiss be denied.

## III.    Fourth Motion to Dismiss the Indictment (Dkt. No. 68)

Mr. Edison argues in his fourth motion to dismiss the Indictment that the Animal Crushing statute is void for vagueness. (Fourth Mot. Dismiss at 3–4, Dkt. No. 68.) The Court addressed a void-for-vagueness argument in its first Report and Recommendation (Dkt. No. 59), but Mr. Edison makes a slightly different argument now. He argues that 18 U.S.C. § 48(a)(1) is vague because it does not give adequate notice that "permitting a captive predatory animal to eat a live prey animal" is prohibited under the statute. (Fourth Mot. Dismiss at 4.)

A criminal statute is unconstitutionally vague when "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "[A] statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391

6

(1926). Fair notice means that a "person of ordinary intelligence could reasonably understand" that their conduct was prohibited. *United States v. Ghane*, 673 F.3d 771, 778 (8th Cir. 2012).

The Animal Crushing statute prohibits a person from purposely engaging in six types of conduct to animals (crushing, burning, drowning, suffocating, impaling, or otherwise subjecting to serious bodily injury) in or affecting interstate or foreign commerce. 18 U.S.C. § 48(a)(1), (f)(1). There are exceptions for, *inter alia*, customary and normal animal management practices and for the slaughter of animals for food. *Id.* ¶ 48(d)(1)(A), (B).

The description of conduct provided by Mr. Edison—"permitting a captive predatory animal to eat a live prey animal"—is incomplete, and thus inaccurate, for two reasons. First, it leaves out the statutory commerce requirement, and second, it does not account for potentially applicable exceptions. Mr. Edison's description of conduct also differs from the actual conduct alleged in the Indictment, which creates a false premise from which to work. The Court will not discuss hypothetical situations but will consider the conduct actually alleged.

The conduct alleged in the Indictment is that Mr. Edison purposely placed small live animals into artificial enclosures with large live reptiles, where they were purposely crushed, impaled, drowned, suffocated, tortured, or skinned and dismembered alive; that he knowingly and purposely engaged in the alleged conduct; that he created videos of the conduct and made the videos available in interstate commerce; and that the alleged conduct was for "his and his viewers' sadistic enjoyment" and his monetary gain. (Indictment ¶¶ 1–

3.) The Court finds that the Animal Crushing statute gives adequate notice that a person of ordinary intelligence who purposely engages in the conduct alleged in the Indictment could reasonably understand their conduct was prohibited.

Mr. Edison next argues that he was prosecuted because of his race, in violation of the Equal Protection Clause, and due to selective prosecution. (Fourth Mot. Dismiss at 4–8.) Mr. Edison has the burden to prove selective prosecution, *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004), and it is a heavy one, *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004). To meet his prima facie burden, Mr. Edison must show that "(1) people similarly situated to him were not prosecuted; and (2) the decision to prosecute was motivated by a discriminatory purpose." *Id.* The United States "violates a defendant's equal-protection rights under the Due Process Clause of the Fifth Amendment when it selectively prosecutes them for an impermissible reason." *United States v. Jama*, No. 22-CR-225 (NEB/DTS), 2024 WL 5381447, at *7 (D. Minn. Nov. 21, 2024) (citing *Leathers*, 354 F.3d at 963), *R. & R. adopted*, 2025 WL 227296 (D. Minn. Jan. 17, 2025).

Mr. Edison asserts there are thousands of YouTube videos of live animal feeding and speculates that the video creators were not prosecuted because they are Caucasian. (Fourth Mot. Dismiss at 4.) He provides no evidence to support these assertions, however. That alone is enough to deny the motion. *See Jama*, 2024 WL 5381447, at *7 (citing cases). Mr. Edison also speculates that no other person has been prosecuted for allowing a captive predatory animal to slaughter a prey animal for the purpose of food, but again, he provides no data or other evidence, nor does he explain how he arrived at that conclusion.

Mr. Edison has not shown either that people similarly situated to him were not prosecuted or that the decision to prosecute was motivated by a discriminatory purpose. Consequently, his fourth motion to dismiss should be denied.

## IV.     Fifth Motion to Dismiss the Indictment (Dkt. No. 73)

In Mr. Edison's fifth motion to dismiss, he asks to dismiss the Indictment on the grounds that the Animal Crushing statute is void for vagueness, that the Indictment fails to state an offense, and that the Indictment fails to give him fair warning of what conduct is prohibited.[2] This motion overlaps almost entirely with motions addressed in the Court's previous Report and Recommendation or motions discussed above, and the Court incorporates by reference its findings and conclusions made above and in the previous Report and Recommendation.

Mr. Edison argues that the Indictment should be dismissed because it fails to state an offense. (Fifth Mot. Dismiss at 2–3, Dkt. No. 73.) The Court views this argument as a challenge to the sufficiency of the Indictment. Generally, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

---

[2] Mr. Edison also requested the appointment of standby counsel in this motion, which the Court granted orally at the motion hearing.

Mr. Edison's argument is based on the same faulty premise discussed in Part III above: that the conduct described in the Indictment is no more than the live feeding of animals. To determine whether the Indictment is sufficient, however, the Court must look at the actual allegations in the Indictment and the language of the statute. The Animal Crushing statute makes it "unlawful for any person to purposely engage in animal crushing in or affecting interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 48(a)(1). "Animal crushing" is defined as "actual conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury." *Id.* § 48(f)(1).

The Court finds that the Indictment tracks the language of the statute and alleges each element. The Indictment alleges that Mr. Edison "purposely engage[d] in actual conduct described in the table below in which one or more living non-human mammals or birds was purposely crushed, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury, in or affecting interstate or foreign commerce." (Indictment ¶ 3.) The "table below" is organized by count and contains the dates, titles, and descriptions of 16 videos, including the actual conduct undertaken by Mr. Edison. (*Id.*) Count 1, for example, charges Animal Crushing in connection with a video made on or about July 20, 2022, titled "Terrible Turtles Eat Cute Chicks," which describes Mr. Edison's conduct as "plac[ing] live baby birds into a water tank containing two turtles. One of the birds was drowned by the turtles and not eaten. Another was pulled under the water and impaled and dismembered

10

as it drowned. This bird was later partially eaten." (*Id.*) Mr. Edison's motion that the Indictment should be dismissed for failure to state an offense should be denied.

## V.  Sixth Motion to Dismiss the Indictment (Dkt. No. 75)

Mr. Edison argues in his sixth motion to dismiss that the alleged conduct is scientific research. (Sixth Mot. Dismiss at 1, Dkt. No. 75.) One of the statutory exceptions to animal crushing is "medical or scientific research." 18 U.S.C. § 48(a)(d)(1)(D). The Court's analysis in Part I of the exceptions for the slaughter of animals for food and animal management practices applies here. Mr. Edison has offered no argument or legal authority that would support the dismissal of the Indictment before trial based on the scientific research exception, nor has he specified what his scientific research consisted of, or what scientific questions he was trying to answer. Whether Mr. Edison's conduct was the offense of animal crushing or whether it was scientific research will depend on the evidence introduced by the parties at trial.

## VI.  Motion for Bench Trial (Dkt. No. 63)

Mr. Edison asks for a bench trial pursuant to Federal Rule of Criminal Procedure 23(a) because he is a pro se defendant and "to protect the public jury." (Dkt. No. 63.) The United States opposes the motion.

Rule 23(a) mandates a jury trial, if a defendant is entitled to one, unless "(1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Fed. R. Crim. P. 23(a). The United States does not consent to a bench trial. (Gov't's Opp'n at 12.) Thus, the motion is denied.

## VII.   Motion to Reopen Detention Hearing (Dkt. No. 64)

Mr. Edison asks to reopen the detention hearing "due to new and material circumstances." (Mot. Reopen Det. Hearing at 1, Dkt. No. 64.) He claims he is not a threat to the public and points out the alleged conduct is over three years old. He also asserts the law library at the Sherburne County Jail is "out of order" and says he need access to a reliable computer since he is representing himself. (*Id.*) Finally, Mr. Edison states he is "disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and hostility." (*Id.*)

The statute authorizing motions to reconsider detention decisions, 18 U.S.C. § 3142(f)(2)(B), is limited to reopening detention decisions when new information is presented that "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." None of Mr. Edison's asserted grounds to reopen the detention hearing meet this standard. Accordingly, the motion is denied.

## VIII.  Motion in Limine to Preclude Evidence (Dkt. No. 69)

Mr. Edison has filed a motion in limine to preclude certain evidence at trial. This trial-related motion is reserved for the trial judge, the Honorable John R. Tunheim. (*See* Third Am. Pretrial Sched. & Litig. Mgmt. Order at 4, Dkt. No. 44.)

## IX.   Motion for Discovery re Selective Enforcement (Dkt. No. 72)

Separate from Mr. Edison's motion to dismiss on the basis of selective enforcement, he brings a motion for discovery in support of his selective enforcement claim. To obtain discovery on this claim, Mr. Edison must first "produce at least some credible showing of

differential treatment of similarly situated members of other races or a protected class." *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) (citing *United States v. Perry*, 152 F.3d 900, 903 (8th Cir. 1998)). To obtain an evidentiary hearing, Mr. Edison "must present some evidence that tends to show the existence of both elements of a selective prosecution claim." *United States v. Peterson*, 652 F.3d 979, 982 (8th Cir. 2011) (cleaned up). Mr. Edison has not produced any evidence tending to show that people similarly situated to him were not prosecuted. His assertion that other YouTube content creators were not prosecuted because they are Caucasian lacks evidentiary support. His assertion that no other person has been prosecuted for allowing a captive predatory animal to slaughter a prey animal also lacks support. Nor has Mr. Edison produced any evidence tending to show that the decision to prosecute him was motivated by a discriminatory purpose. Therefore, his motion for discovery is denied.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Mr. Edison's second Motion to Dismiss Indictment (Dkt. No. 61) be **DENIED**;

2. Mr. Edison's third Motion to Dismiss Indictment (Dkt. No. 65) be **DENIED**;

3. Mr. Edison's fourth Motion to Dismiss Indictment (Dkt. No. 68) be **DENIED**;

4. Mr. Edison's fifth Motion to Dismiss Indictment (Dkt. No. 73) be **DENIED**; and

5. Mr. Edison's sixth Motion to Dismiss Indictment (Dkt. No. 75) be **DENIED**.

**IT IS FURTHER ORDERED** that:

1. Mr. Edison's Motion for Bench Trial (Dkt. No. 63) is **DENIED**;

2. Mr. Edison's Motion to Reopen Detention Hearing (Dkt. No. 64) is **DENIED**;

3. Mr. Edison's Motion in Limine to Preclude Evidence (Dkt. No. 69) is **RESERVED FOR TRIAL**; and

4. Mr. Edison's Motion for Discovery (Dkt. No. 72) is **DENIED**.

Dated: June 5, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

## NOTICE

**Filing Objections:** A Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).