UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-336 (JRT/JFD)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRYAN WESLEY EDISON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **TRIAL BRIEF OF THE UNITED STATES** |

## I. TRIAL COUNSEL

The following counsel will represent the government:

Assistant United States Attorney Jeanne Semivan
Assistant United States Attorney Campbell Warner
United States Attorney's Office, District of Minnesota
300 South Fourth Street, 6th Floor
Minneapolis, MN 55415
612-664-5600

## II. INDICTMENT

Edison is charged by indictment with sixteen counts of animal crushing in violation of 18 U.S.C. § 48(a)(1).

## III. SUMMARY OF THE EVIDENCE AT TRIAL

The government expects to prove that beginning on or before July 30, 2022, and continuing until at least October 19, 2023, Edison engaged in conduct in which he was responsible for living non-human mammals, birds, reptiles, or amphibians being purposely crushed, burned, drowned, suffocated,

impaled, or otherwise subjected to serious bodily injury. These activities were documented by video, which Edison posted to YouTube channels he operated, including "Prince's House of Dragons," "Prince's Pet Planet," and "Prince's Chomp Squad".

Under 18 U.S.C. § 48(a)(1), "animal crushing" is "actual conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury." The statute contains exceptions for, among other things, hunting, trapping, fishing, or other federally permissible sporting activities; slaughtering animals for food; euthanizing an animal; medical or scientific research; or engaging in customary and normal veterinary, husbandry, or other animal management practice. 18 U.S.C. § 48(d)(1).

The YouTube channels consisted of videos of various lengths in which Edison paired a large, exotic reptile (such as a snapping turtle or Tegu lizard) with one or more smaller live animals (such as guinea pigs, rabbits, birds, and rodents) to attack and, sometimes, eat. YouTube ultimately removed each channel for violations of YouTube's policy on violence.

Edison posted some videos on the free versions of his YouTube channels. Those videos were often not as violent as the ones on the paid membership versions of his channels. For example, a video on a free version of a channel might show the predator animal eating the prey animal whole.

But Edison saved the more violent videos, including ones in which he is present, for the paid membership channels. Those videos involved, for example, larger prey animals like guinea pigs being torn apart before dying and being eaten by the predator animals. Another video shows Edison's dog attacking and killing a guinea pig in a bathtub. Other videos showed the prey animals drowning.

Some of the videos available on the free versions of the channels included print or verbal advertisements of the paid materials, such as "Dog mauls guinea pig on membership page! Too graphic!!" Edison's videos included such titles as "Snapping Turtle Gives Rat a Slow Death" and "Monitor Lizard Murders Retarded Rat." Other words and phrases Edison used in his video titles include "destroyed," "shred," "terrorize," "screaming hamsters," "kills mouse brutally," "lizard rips rats a new asshole," and "THAT REALLY HURTS."

Edison offered three levels of paid membership: $0.99 per month, $9.99 per month, and a "choose your own scenario" option for $99.99. He made money from his YouTube channels, as subpoenaed materials show that he received at least $1,500 in payments through YouTube.

The government has to prove that Edison's conduct violated 18 U.S.C. § 48(a)(1), which it will do by admitting and publishing the videos documenting this conduct, establishing through expert testimony that the videos do not

depict customary and normal animal management practices, and that none of the other exceptions under 18 U.S.C. § 48(d)(1) apply. The government must also prove that Edison's activity was in or affecting interstate commerce. Again, the evidence will prove that. As stated above, Edison's face and voice are present on some of the videos. Further, some videos were posted not only to one of his YouTube channels, but also to two publicly-accessible Facebook accounts and an Instagram account. Finally, information obtained via search warrant from Google (which owns YouTube) and Apple further establishes that Edison produced the videos and posted them on the Internet.

## IV. <u>TRIAL PRESENTMENT AND EVIDENCE</u>

The government intends to call three witnesses: two FBI agents and one civilian. Special Agent Alyssa Leary will be the government's case agent and is expected to testify about the investigation into Edison's crimes. Special Agent Trevor Bruders will testify as an expert digital forensic examiner about his analysis of the digital evidence. Finally, Mr. Jason "Jay" Pratte is expected to testify as an expert in the field of animal behavior, husbandry, and welfare, including best practices.

The government intends to introduce approximately seventeen videos, which are referenced in the Indictment and form the basis of Counts 1-16. These videos depict what the government intends to prove is animal crushing

within the meaning of 18 U.S.C. § 48(a)(1). These videos are graphic, so the Court may wish to consider issuing a warning instruction to the jury.

## V. EVIDENTIARY ISSUES

### A. Motions in limine

The government will file an omnibus motion in limine asking the Court to (1) preclude Edison from providing or eliciting testimony or argument regarding the constitutionality of 18 U.S.C. § 48; (2) preclude Edison from providing or eliciting testimony or argument regarding his purported religious beliefs; (3) preclude Edison from referring to potential punishments; (4) preclude Edison from presenting evidence or arguments designed to elicit jury nullification; (5) to sequester witnesses except for the government's case agent; (6) to admit Rule 1006 summaries; and (7) to preclude Edison from offering or referring to his own hearsay statements.

The motions to preclude Edison from presenting evidence or arguments about the constitutionality of the statute or regarding his claimed religious beliefs are based on the Court's denials of Edison's related pretrial motions. The Court has ruled on those questions of law, and it would be improper for Edison to attempt to introduce such matters to the jury.

The remaining motions in limine are of the type commonly filed in this Court. Although these could be characterized as "make Edison follow the law"

motions, rulings and orders on these motions will help Edison, who is expected to act pro se, understand what he may and may not present and argue.

**B. Rule 404(a) and Impeachment Evidence**

The government does not intend to seek to introduce evidence pursuant to Rule 404(b). In the event the defendant chooses to testify, however, the government reserves the right to introduce evidence pursuant to Rule 404(a)(2)(A) to rebut the defendant's testimony, should he offer evidence of a pertinent character trait. The government may also introduce such evidence as extrinsic evidence to impeach the defendant's testimony. Specifically, the government may seek to introduce recordings of jail calls as impeachment evidence in the event that the defendant chooses to testify.

**C. Business Records**

The government intends to introduce business records. These records meet the requirements of Rule 803(6). Such records will also be accompanied by certification under Rule 902(11).

**D. Rule 1006 Summaries**

The Government will moves to admit two summary charts and demonstrative aids in this case. Specifically, the Government anticipates offering two charts under Federal Rule of Evidence 1006: one chart summarizing metadata related to the videos depicting the conduct charged in

this case, and a chart synthesizing payments Edison received from the website platform on which he posted the videos

Rule 1006 permits a proponent to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Summary charts are admissible if "(1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *United States v. Needham*, 852 F.3d 830, 837 (8th Cir. 2017) (quotation omitted). Additionally, parties may use a "'pedagogic device,' such as a summary of witness testimony and/or trial exhibits, to organize testimony and other evidence for the jury." *Id.* Because the raw data underlying these summaries are voluminous and their interconnections multilayered, the Government intends to offer summary charts into evidence to aid the jury.

## VI. DEFENSES

Edison has not noticed any affirmative defenses.

DATE: October 23, 2026

DANIEL N. ROSEN
United States Attorney

*/s/ Jeanne D. Semivan*
Jeanne D. Semivan
Campbell Warner

Assistant United States Attorneys
United States Attorney's Office
300 S. 4th Street, 6th Floor
Minneapolis, MN 55415
(612) 664-5600